UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

WANDA KING

VERSUS

TRAVIS JAMES HERBERT,
BURNELL THOMPSON III,
DOUGLAS THOMPSON, DARYL
DAVIS, LANNY BERGERON, BRETT
STASSI, and IBERVILLE PARISH
SHERIFF'S DEPARTMENT

DOCKET NO.:

DIVISION:

MAGISTRATE:

JURY TRIAL REQUESTED

COMPLAINT

NOW INTO COURT, through the undersigned counsel, comes Plaintiff,

WANDA KING, a major domiciliary of Iberville Parish, Louisiana, who respectfully avers

the following, upon information and belief:

I.      GROUNDS FOR THE COURT'S JURISDICTION

1.      Under 28 U.S.C. § 1331, this Honorable Court has original jurisdiction over

this civil action arising under the Fourth and Fourteenth Amendments to the Constitution of

the United States and 42 U.S.C. §§ 1983 and 1988 as hereinafter more fully appears.

2.      Under 28 U.S.C. § 1343(a)(3), this Honorable Court has original jurisdiction

over this civil action to redress deprivation, under color of State law, statute, ordinance,

regulation, custom or usage, of the foregoing rights, privileges or immunities secured by the

Constitution of the United States and by the foregoing Acts of Congress providing for equal

rights of citizens or of all persons within the jurisdiction of the United States as hereinafter

more fully appears.

3.      Under 28 U.S.C. § 1367, this Honorable Court has supplemental jurisdiction

over all claims pleaded herein as they are so related to claims in the action within such

1

original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.      The relationship between the claims arising under the Constitution and laws of the United States and Louisiana State Constitution and laws permit the conclusion that the entire action before this Honorable Court comprises but one case.  The federal claims have substance sufficient to confer subject matter jurisdiction on this Honorable Court.

5.      The state and federal claims pleaded herein derive from a common nucleus of operative fact. They are such that Plaintiff would ordinarily be expected to try them all in one judicial proceeding.  Trying all claims in one judicial proceeding serves judicial economy, convenience, and fairness to litigants more than trying them separately.  Trying the claims separately would increase the likelihood of jury confusion.

## II.     VENUE

6.      Under 28 U.S.C. § 1391(b)(1), venue within this District is proper as Defendants BRETT STASSI and IBERVILLE PARISH SHERIFF'S DEPARTMENT reside within this district and, upon information and belief, all Defendants are residents of the State of Louisiana.

7.      Under 28 U.S.C. § 1391(b)(2), venue within this District is proper as a substantial part of the events or omissions giving rise to the claims occurred within this district.

## III.    PARTIES

### A.  Made defendants herein are:

8.      Defendant TRAVIS JAMES HERBERT ("HERBERT") is a natural person and deputy of the Defendant IBERVILLE PARISH SHERIFF'S DEPARTMENT, employed by Defendant BRETT STASSI, the Iberville Parish Sheriff.  At all relevant times

herein, Defendant HERBERT was acting under color of statute, ordinance, regulation, custom or usage of the State of Louisiana at all relevant times herein.  Defendant HERBERT is sued in his individual and official capacity.

9.    Defendant BURNELL THOMPSON, III ("B. THOMPSON III"), is a natural person and Trooper First Class ("TFC") of the Louisiana Office of State Police, which falls under the authority of the Louisiana Department of Public Safety and Corrections ("LADPS"), with badge number 2455.  At all relevant times herein, Defendant B. THOMPSON III was acting under color of statute, ordinance, regulation, custom or usage of the State of Louisiana.  Defendant B. THOMPSON III is sued in his individual capacity.

10.    Defendant DOUGLAS THOMPSON ("D. THOMPSON") is a natural person and TFC of the Louisiana Office of State Police, which falls under the authority of the LADPS, with badge number 2374.  At all relevant times herein, Defendant D. THOMPSON was acting under color of statute, ordinance, regulation, custom or usage of the State of Louisiana.  Defendant D. THOMPSON is sued in his individual capacity.

11.    Defendant DARYL DAVIS ("DAVIS") is a natural person and sergeant ("SGT") of the Louisiana Office of State Police, which falls under the authority of the LADPS.  At all relevant times herein, Defendant DAVIS was acting under color of statute, ordinance, regulation, custom or usage of the State of Louisiana.  Defendant DAVIS is sued in his individual capacity.

12.    Defendant LANNY BERGERON ("BERGERON") is a natural person and Lieutenant ("LT") of the Louisiana Office of State Police, which falls under the authority of the LADPS.  At all relevant times herein, Defendant BERGERON was acting under color

of statute, ordinance, regulation, custom or usage of the State of Louisiana.  Defendant

BERGERON is sued in his individual capacity.

13.     Defendant IBERVILLE PARISH SHERIFF'S DEPARTMENT

("IBERVILLE SHERIFF'S DEPT") is a political subdivision and is the chief law

enforcement agency in Iberville Parish, Louisiana whose administrative office is located at

58050 Meriam Street, Plaquemine, Louisiana 70764.

14.     Defendant BRETT STASSI ("STASSI") is the Iberville Parish Sheriff, a

political subdivision, and is the chief law enforcement officer of the Parish of Iberville and

the Defendant IBERVILLE SHERIFF'S DEPT.  Defendant STASSI's administrative office

is located at 58050 Meriam Street, Plaquemine, Louisiana 70764.  Defendant STASSI is sued

in his official capacity.

### B. Plaintiff

15.     Plaintiff WANDA KING ("KING") sustained actual injuries and injuries to

her Federal and State Constitutional rights, which are fairly traceable to the Defendants'

conduct.  There is sufficient likelihood that a favorable decision on the merits will redress

her injuries.

16.     Said Defendants are truly and justly indebted to Plaintiff for the following

reasons:

## IV.     STATEMENT OF FACTS

### A. Date, time, and place of collision

17.     On or about July 23, 2016 and at all relevant times herein, the area where

Louisiana Highway 1 ("LA-1") and Castro Street meet is an "intersection" as defined in La.

Rev. Stat. Ann. § 32:1.

18.    On or about July 23, 2016 and at all relevant times herein, intersection at LA-1 and Castro Street contains a "crosswalk" as defined in La. Rev. Stat. Ann. § 32:1.

19.    On or about July 23, 2016 and at all relevant times herein, the intersection of LA-1 and Castro Street and surrounding area are a "residence district" as defined in La. Rev. Stat. Ann. § 32:1.

20.    On or about July 23, 2016, 9:20 PM, at milepost 138.01 on LA-1, 0.38 miles south of Louisiana Highway 75 ("LA-75"), near the intersection of LA-1 and Castro Street, Defendant HERBERT was driving southbound in a certain 2014 Chevrolet Tahoe bearing Louisiana Public License Plate number "PP236204," owned by Defendant IBERVILLE SHERIFF'S DEPT and, Defendant STASSI ("Defendants' Vehicle").  The foregoing Defendants' Vehicle is a police vehicle, unit #704.

21.    On or about July 23, 2016, 9:20 PM, at milepost 138.01 on LA-1, 0.38 miles south of LA-75, at the intersection of LA-1 and Castro Street, Plaintiff KING was a pedestrian crossing LA-1 at the intersection with Castro Street in a crosswalk.

22.    It is alleged, upon information and belief, that Defendant HERBERT was driving too closely to another vehicle, traveling at a speed greater than was reasonable and prudent under the conditions, and not keeping a proper look out before the collision in this case happened.

### B.  The Collision

23.    On or about July 23, 2016, 9:20 P.M., at milepost 138.01 on LA-1, 0.38 miles south of LA-75, at the intersection of LA-1 and Castro Street ("date, time, and place of collision"), Defendants' Vehicle violently collided with Plaintiff KING causing serious personal injuries including but not limited to severing Plaintiff's right leg.

### C. Plaintiff's Injuries and Condition Post-Collision

24.     Immediately after the collision, Plaintiff was in critical condition laying in the middle of on LA-1.  Plaintiff's amputated right leg was in the road several feet away from the rest of her body.  The severed right leg was nonviable and crushed.  She also had a right non-displaced wrist fracture and right fourth finger proximal phalanx fracture, among other injuries.

25.     At approximately 9:34 P.M., Acadian Ambulance Services arrived to the scene.  A combat tourniquet was applied to Plaintiff's severed right leg to staunch the bleeding.  Plaintiff was unable to sign the privacy and payment notice from Acadian Ambulance Services.  Exhibit A.

26.     At approximately 10:06 P.M. Plaintiff arrived to Our Lade of the Lake Hospital's Emergency Care Unit.  She appeared to be in traumatic shock. At that time, Plaintiff was ordered to receive four units of red blood cells in the hospital.  Exhibit B.  Plaintiff's mangled right leg was brought in an ice chest to the hospital.  Exhibit C.  The leg could not be saved.

27.     At approximately 10:49 P.M., Plaintiff was unable to sign the Consent for Medical Procedure Acknowledgment for doctors to operate and complete the first amputation of her right leg.  Exhibit D.  A representative consented to Plaintiff's first operation to amputate her right leg.[1]

### D. Post-Collision Police Conduct

28.     At approximately 10:30 P.M., before Plaintiff underwent her first amputation in the hospital and as she was undergoing emergency medical treatment, Defendant B.

---

[1] Plaintiff underwent a second amputation on or about July 26 2016.

6

THOMPSON III requested and observed RN Leigh Ann Trepagnier draw Plaintiff's blood to test it for intoxication ("blood test").

29.    Defendants never obtained a warrant to search Plaintiff.

30.    Defendants never obtained a warrant to arrest Plaintiff.

31.    Defendants did not have probable cause to order the foregoing blood test.

32.    Defendants did not know of the existence of any drug paraphernalia before requesting the foregoing blood test.  Defendants did not see any drug paraphernalia before requesting the foregoing blood test.

33.    Defendants did not know of the existence of any drug paraphernalia before observing the foregoing blood test.  Defendants did not see any drug paraphernalia before observing the foregoing blood test.

34.    Defendants could not determine whether Plaintiff was intoxicated at the time Defendants requested and observed the foregoing blood test.

35.    Plaintiff did not render effective consent to the foregoing blood test.

36.    Plaintiff did not voluntarily give consent to the foregoing blood test.

37.    Plaintiff did not have the mental capacity to consent to the foregoing blood test.

38.    Plaintiff was unable to sign the police "consent form" which would grant permission for blood samples to be taken from her.  Exhibit E.

39.    Plaintiff was unable to sign the "voluntary submission to the chemical test" on the form from the Department of Public Safety and Corrections titled "Notice to Withdraw Blood for Chemical Test for Intoxication."  Exhibit E.

40.    The blood test was not performed incident to arrest.

41.    Defendants were not presented with exigent circumstances to justify administering the foregoing blood test without obtaining a warrant.

42.    Defendants could have held Plaintiff in custody while attempting to obtain a warrant from a neutral magistrate.  Defendants were not presented with any danger in remaining with Plaintiff while attempting to obtain a warrant from a neutral magistrate.  Defendants were not presented with any emergency exception to the warrant requirement.  Upon information and belief, Defendants were not presented with exceptional circumstances that would have impeded them from obtaining a warrant.  Defendants would not have been delayed in obtaining a warrant had they sought one.

43.    On July 24, 2016, at 2:30 A.M., Defendant D. THOMPSON interrogated Plaintiff while she was in the critical care unit of Our Lady of the Lake Hospital.

44.    Defendant D. THOMPSON issued Plaintiff a traffic summons charging her with violating Louisiana Revised Statute 32:213 (Crossing at other than crosswalks); 14:103(a)(3) (disturbing the peace by "appearing in an intoxicated condition"); and 40:1023(c) (possession/use drug paraphernalia).  Exhibit F.

45.    Plaintiff was unable to sign the traffic summons.  Exhibit F.

46.    Defendants never drew Defendant HERBERT's blood to test it for intoxication.

## V.    CLAIMS FOR RELIEF

### A.  FIRST CLAIM FOR RELIEF (Negligence)

47.    The foregoing collision and Plaintiff's personal injuries were caused by the neglect or other fault of Defendant HERBERT in breaching a legally imposed duty of reasonable care; carelessly operating a vehicle; following too closely, failing to maintain a proper lookout; careless operation of a vehicle; failing to yield to a pedestrian; and, other acts

of negligence which may be shown at the trial of this matter and which acts or omissions constituted negligence that is the proximate cause of this collision and Plaintiff's injuries.

48.     Drivers on Louisiana public roads must drive in a careful and prudent manner, so as not to endanger the life, limb, or property of any person. Failure to drive in such a manner shall constitute careless operation.

49.     At the foregoing date, time and place of collision and for a relevant period prior thereto, Defendant HERBERT caused the foregoing collision and Plaintiff's injuries by choosing not to drive in a careful and prudent manner, thereby endangering the life, limb or property of Plaintiff.

50.     Drivers must never drive on the highway at a speed greater than is reasonable and prudent under the conditions and potential hazards then existing, having due regard for the traffic on, and the surface and width of, the highway, and the condition of the weather.

51.     At the foregoing date, time and place of collision and for a relevant period prior thereto, Defendant HERBERT caused the foregoing collision and Plaintiff's injuries by driving at a speed greater than was reasonable and prudent under the conditions.

52.     Drivers must never drive to the left of the center of the highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken.  In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction.

53.     At the foregoing date, time and place of collision and for a relevant period prior thereto, Defendant HERBERT caused the foregoing collision and Plaintiff's injuries by

9

attempting to overtake a vehicle by driving to the left of the center of the highway when the left side was not clearly visible, was not free of obstructions for a sufficient distance ahead to permit such overtaking and passing to be completely made safely.

54.    Drivers must never be driven to the left side of the highway when approaching within one hundred feet of or traversing any intersection.

55.    At the foregoing date, time and place of collision and for a relevant period prior thereto, Defendant HERBERT caused the foregoing collision and Plaintiff's injuries by driving to the left side of the highway at the intersection of LA-1 and Castro Street.

56.    Drivers must drive, as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

57.    At the foregoing date, time and place of collision and for a relevant period prior thereto, Defendant HERBERT caused the foregoing collision and Plaintiff's injuries by moving from his lane before ascertaining that such movement could be made with safety.

58.    Drivers must never follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the roadway.

59.    At the foregoing date, time and place of collision and for a relevant period prior thereto, Defendant HERBERT caused the foregoing collision and Plaintiff's injuries by following another vehicle more closely than was reasonable and prudent without regard for the speed of such vehicle and the traffic upon and the condition of the highway.

60.    Drivers of authorized emergency vehicles must drive with due regard for the safety of all persons using the highway.

10

61.     At the foregoing date, time and place of collision and for a relevant period prior thereto, Defendant HERBERT caused the foregoing collision and Plaintiff's injuries by driving without due regard for the safety of all persons using the highway, including Plaintiff.

62.     Drivers must exercise due care to avoid colliding with any pedestrian on any roadway.

63.     Drivers must give warning by sounding the horn when necessary.

64.     Drivers must exercise proper precaution when observing any person upon a highway.

65.     At the foregoing date, time and place of collision and for a relevant period prior thereto, Defendant HERBERT caused the foregoing collision and Plaintiff's injuries by not exercising due care to avoid colliding with Plaintiff on the roadway.

66.     At the foregoing date, time and place of collision and for a relevant period prior thereto, Defendant HERBERT caused the foregoing collision and Plaintiff's injuries by not giving warning to Plaintiff by sounding the horn when necessary.

67.     At the foregoing date, time and place of collision and for a relevant period prior thereto, Defendant HERBERT caused the foregoing collision and Plaintiff's injuries by not exercising proper precaution when observing Plaintiff upon the highway.

68.     At all relevant times herein including at the foregoing date, time and place of collision and for a relevant period prior thereto, Defendants STASSI and IBERVILLE SHERIFF'S DEPT employed Defendant HERBERT.

69.     At all relevant times herein including at the foregoing date, time and place of collision and for a relevant period prior thereto, Defendants STASSI and IBERVILLE SHERIFF'S DEPT retained the right to supervise and control Defendant HERBERT.

11

70. At all relevant times herein including at the foregoing date, time and place of collision and for a relevant period prior thereto, Defendant HERBERT was acting in the course and scope of his employment and was performing duties for his employer, rendering Defendants STASSI and IBERVILLE SHERIFF'S DEPT vicariously liable for the injuries and damages claimed herein.

71. As a result of the described collision and Defendants' negligence, Plaintiff KING suffered severe personal injuries, including but not limited to severe physical injury, severe emotional injury, pain and suffering, past and future medical expenses, loss of enjoyment of life, and other damages which may be shown at the trial of this matter.

72. At all pertinent times, Defendants HERBERT, STASSI and the IBERVILLE SHERIFF'S DEPT were insured by American Alternative for automobile liability which coverage included the driver and vehicle involved in this collision and the injuries and damages claimed herein.

**B. SECOND CLAIM FOR RELIEF (U.S. Const. amend. IV, XIV; 42 U.S.C. §§ 1983, 1988; and La. Const. Ann. art. I, § 5.)**

73. The foregoing allegations are incorporated by reference.

74. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

75. The Fourth Amendment to the United States Constitution has been declared enforceable against the States through the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

76.    "Section 5. Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court." La. Const. Ann. art. I, § 5.

77.    Chemical testing by compelled physical intrusion beneath a person's skin and into the person's veins to obtain a sample of blood (the "blood test") plainly constitutes a search under the Fourth and Fourteenth Amendments of the United States Constitution and under Article I, Section 5 of the Louisiana State Constitution. A blood test implicates an individual's most personal and deep-rooted expectations of privacy.

78.    A search warrant is ordinarily required for searches that intrude into the human body, even when such a search is conducted following a lawful arrest. The importance of obtaining authorization by a neutral and detached magistrate before allowing a law enforcement officer to invade another person's body in search of evidence of guilt is indisputable and great.

79.    When the government's interest is only to charge a minor offense, that presumption of unreasonableness of a warrantless search is difficult to rebut.

80.    In committing the acts complained of herein, including ordering the foregoing blood test of Plaintiff, Defendants TRAVIS JAMES HERBERT, BURNELL THOMPSON III, DOUGLAS THOMPSON, DARYL DAVIS, LANNY BERGERON, BRETT STASSI, and the IBERVILLE PARISH SHERIFF'S DEPARTMENT acted under

13

color of state law to deprive Plaintiff KING her right to be free from unreasonable search and seizures and her right to due process of law.

81.     In committing the acts complained of herein, including ordering the foregoing blood test, Defendants TRAVIS JAMES HERBERT, BURNELL THOMPSON III, DOUGLAS THOMPSON, DARYL DAVIS, LANNY BERGERON, BRETT STASSI, and the IBERVILLE PARISH SHERIFF'S DEPARTMENT acted with reckless or callous disregard for Plaintiff's rights and intentionally violated federal law.  The aforementioned Defendants were motivated by evil motive or intent.

82.     As a direct and proximate cause of the violations of Plaintiff's constitutional rights by the Defendants TRAVIS JAMES HERBERT, BURNELL THOMPSON III, DOUGLAS THOMPSON, DARYL DAVIS, LANNY BERGERON, BRETT STASSI, and the IBERVILLE PARISH SHERIFF'S DEPARTMENT, Plaintiff suffered general and special damages as alleged in this Complaint and is entitled to compensatory and punitive damages, attorney's fees, and costs pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just.

### VI.      EXPERT WITNESS FEES

83.     Plaintiff desires to have this Honorable Court fix the fee for each and every expert witness they may be required to call or use to establish the cause, nature, and extent of Plaintiff's losses and damages and to tax same as costs herein.

### VII.     JURY DEMAND

84.     Plaintiff is entitled to and desires a trial by jury.

### VIII.    PRAYER FOR RELIEF

**WHEREFORE**, in light of the foregoing facts and claims for relief, Plaintiff requests that this Honorable Court take the following actions:

14

A.      That a certified copy of this Complaint, together with citations, to appear and answer the same in the form and manner prescribed by law, be duly served upon the defendants, in accordance with law, and after all legal delays and due proceedings had, there be judgment herein in favor of Plaintiffs and against Defendants TRAVIS JAMES HERBERT, BURNELL THOMPSON III, DOUGLAS THOMPSON, DARYL DAVIS, LANNY BERGERON, BRETT STASSI, and the IBERVILLE PARISH SHERIFF'S DEPARTMENT;

B.      That this Honorable Court fix the fee for each and every expert witness that may be required to call or use to establish the cause, nature, and extent of their losses and damages and to tax the same as costs herein;

C.      Award Plaintiff reasonable compensatory damages and all other damages allowed by law;

D.      Award Plaintiff punitive damages allowed by law;

E.      Grant Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law;

F.      Award Plaintiff pre-judgment interest and post-judgment interest on any award of damages to the extent permitted by law from the date of judicial damand, until paid, and for the cost of proceedings; and,

G.      Grant such other relief as this Honorable Court deems just and proper which law, equity, or the nature of the case may permit.

**RESPECTFULLY SUBMITTED,**

BY: _____

BRYAN D. FISHER, La. Bar Roll #20812
CHRIS J. DAY, La. Bar Roll #33797
FISHER INJURY LAWYERS
6715 Perkins Road
Baton Rouge, LA 70808
Telephone: (225) 766-1234
Facsimile: (225) 612-6813